J-S43043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.R. | : | |
| | : | |
| Appellant | : | No. 100 MDA 2019 |

Appeal from the Order Entered December 19, 2018
in the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2018-03373

BEFORE:   GANTMAN, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED OCTOBER 07, 2019**

Appellant, A.R. ("Father"), appeals from the order entered December 19, 2018 in the Court of Common Pleas of Cumberland County, which granted C.R. ("Mother") primary physical custody of their two sons: D.R., born in November 2014, and B.R., born in October 2016 (collectively, "the Children").[1]   The trial court also gave Mother permission to relocate with the Children to Baltimore County, Maryland.  After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] While the subject order was dated December 14, 2018, notice pursuant to Pa.R.C.P. 236(b) was not provided and docketed until December 19, 2018. An order will be deemed to be entered on "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)."  Pa.R.A.P. 108(b).  Our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." ***Frazier v. City of Philadelphia***, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999).

Mother and Father were married in January 2013 and separated in March 2018.[2] While married, Father and Mother also had partial custody of Father's two children from his prior marriage: Q.R. and J.R., who were twelve and eleven years old, respectively, at the time of the custody hearing. Upon the parties' separation, at Mother's request, Father vacated the marital home, which is located in Mechanicsburg, Pennsylvania.[3]

Father initially had trouble finding suitable housing for himself and the Children. After the separation, Father moved into his uncle's three-bedroom home. However, this living arrangement did not work out as D.R. had an allergic reaction to Father's uncle's dog. Thus, Father leased a two-bedroom apartment in Mechanicsburg to have overnight custody of the Children. Mother had primary custody of the Children during this transition. Once settled in his apartment, Father upheld the equally-shared custody arrangement.

On April 11, 2018, Mother filed a Complaint to seek primary custody of the Children. Conciliation proceedings were held resulting in orders for shared physical custody in the form of an alternating 2-2-3 schedule. *See* Orders 5/23/18 and 9/12/18. The parties had difficulty with this arrangement due to

---

[2] The parties were still married at the time of the hearing on Mother's custody and relocation petition. N.T. at 26.

[3] The parties disagree on whether there was adequate discussion on whether Father could live in the marital home together to make the transition easier.

frequent exchanges of the Children, the lack of stability and consistency, as well as poor communication and hostility between the parties.

Mother served Father with notice of proposal to relocate with the Children from Cumberland County, Pennsylvania to Baltimore County, Maryland. Father filed a counter-affidavit noting his objection to the proposed relocation on September 26, 2018. The trial court conducted a hearing on December 14, 2018.

Mother testified that the main reason to relocate to Maryland was to return to her hometown where she would have support from her parents and and allow the Children to grow up with her extended family. Mother also claimed that relocating would give her the potential for a promotion at her current employment position in medical sales and give her the opportunity to work in a more condensed territory. While Mother acknowledged that she was not promised any change in title or salary in connection with the relocation, she testified that relocation would expand her advancement opportunities as she is next in line to be promoted to region training manager, but needs to live near a major city to be promoted. Mother currently earns a base salary of $82,000 along with sales commission that varies year-to-year.

Specifically, Mother testified that she was requesting to relocate sixty miles to Sparks, Maryland, where she and the Children would initially be residing with her mother; Mother asserted that the travel time between that residence and Father would be one hour "door-to-door." Notes of Testimony

(N.T.), 12/14/18, at 55. Mother planned to get a home of her own, but claimed she cannot do so until the marital residence in Mechanicsburg is sold.

In addition, Mother presented the expert testimony of Jamie Orris, therapist, Winding Creek Counseling Services. Since May 2018, Ms. Orris had been providing counseling services to D.R., who was exhibiting aggressive behavior and tantrums. Ms. Orris expressed concern as to Father's reported use of corporal punishment. *See* Plaintiff's Exhibit 2.

Father also testified on his own behalf to request equally-shared custody of the Children and challenge Mother's proposed relocation. Father claimed the relocation would not only separate him from the Children, but also separate the Children from their siblings, Q.R. and J.R. While Father admitted that he has not had consistent custody of Q.R. and J.R. since his separation with Mother, he fully intended to resume his shared custody of his older children as well once he was able to move into a more spacious home. Father testified that he wanted to purchase a home that would allow him to live near all four of his children. Father is currently employed in a data management position, earning $85,000 annually, with flexibility that allows him to work from home two days a week while caring for the Children.

Given the distance between the parties, Father asserted that the relocation would "dramatically" impact the Children's relationship with Father and their siblings. N.T. at 104-105. Father asserted that the distance between the parties' would be significant (approximately 90 minutes) as traffic into the Maryland area would lengthen the commute. Father was concerned that he

would not get the chance to coach the Children's sporting teams or be involved in after-school events like chorus. Father asserted that he wanted to be an involved parent but would be prevented from doing so with a custody schedule where he only would see the Children every other weekend.

Father criticized Mother's suggestion that the relocation to Maryland would provide the Children with better family support. Although Father does not have a strong relationship with his parents, he asserted that he has a strong support in the area from his brother, uncle, and the Children's godparents. Father also pointed out that Mother's family visit the Children in central Pennsylvania often so the frequency of contact with Mother's family would not change significantly if her relocation request was denied.

Father acknowledged that the parties need to seek to determine why D.R. has been exhibiting aggressive behavior. Father pointed out that D.R.'s anger issues started at the birth of his younger brother, B.R. and his aggression has primarily been directed at B.R. In addition, Father notes that B.R. exhibits separation anxiety when leaving his parents. Father admitted to giving B.R. spankings sparingly as a form of discipline, but admitted he was receptive to trying other avenues of discipline. Father indicated that he wanted to show B.R. how to be respectful of his mother and family members.

Father presented the testimony of Kayla Lingle, Cumberland County Children and Youth intake caseworker. Ms. Lingle testified she met with Mother and Father after the agency received a referral for a child abuse investigation. Ms. Lingle determined that the case against Father was

unfounded, noting that she observed Father engage with the Children and appropriately discipline B.R. during her visit.

Moreover, Father presented the testimony of M.C.B., his ex-wife and mother of his two older children, Q.R. and J.R. M.C.B. confirmed that she has shared exercised equal custody rights with Father for eight years and they have been able to effectively co-parent Q.R. and J.R. While M.C.B. admitted that Father was a "disciplinarian," she primarily characterized Father as a "caring and affectionate" parent who was "always for the best interests of the children." N.T. at 128. In addition, M.C.B. confirmed that Q.R. and J.R. have been taking the separation from the Children "quite hard" as they could not see the Children for extended periods of time. *Id*. at 131.

At the conclusion of the hearing, by order dated December 14, 2018, and entered December 19, 2018, the trial court granted Mother permission to relocate with the Children to Baltimore County, Maryland.

The court further awarded the parties shared legal custody and Mother primary physical custody of the Children subject to Father's partial physical custody. Until D.R. is enrolled in school, the court granted Father partial physical custody every other Wednesday from 6:00 p.m. until Sunday at 6:00 p.m., three non-consecutive one-week periods from Sunday at 6:00 p.m. until the following Sunday at 6:00 p.m. upon thirty-days written notice to Mother, and other times as agreed by the parties.

Upon D.R. being enrolled in school, the court also granted Father partial physical custody every other Wednesday from 6:00 p.m. until Sunday at 6:00

p.m. However, beginning the first Sunday after school ends for the summer until the second Sunday before school begins in the fall, Father will have custody on a week on-week off basis, with the exchange to take place Sunday at 6:00 p.m.; and other times as the parties agree. The court also provided for, among other things, transportation by the party relinquishing custody, liberal telephone contact on a reasonable basis, as well as a holiday schedule.

On January 15, 2019, Father filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father raises the following issues for our review:

1. Should the lower [c]ourt's [o]rder granting Mother's [p]etition to relocate be reversed where its consideration of the relevant factors was based on factual findings and inferences that were either not supported by or contradicted by the evidence in the record?

2. Should the lower [c]ourt's [o]rder eliminating the 2-2-3 custody schedule in favor of awarding Mother primary physical custody be reversed because the factual findings and inferences that the [c]ourt relied on were not supported by the record, resulting in a custody schedule that is not in the best interests of the children?

Father's Brief at 3-4.[4]

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual

---

[4] While Father states the issues somewhat differently in his Rule 1925(b) statement, we find that he has preserved his challenges to the custody order.

determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted); *see also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa.Super. 2015) *appeal denied*, 635 Pa. 754, 129 A.3d 521 (2016). This Court consistently has held:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (*quoting Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super. 2004)). In addition,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa.Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. ***See*** 23 Pa.C.S. §§ 5328, 5338. Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323(a).

Section 5328(a) sets forth the best interest factors that the trial court must consider in doing so. ***See E.D. v. M.P.***, 33 A.3d 73, 79-80 n.2 (Pa.Super. 2011). Section 5328(a) of the Act provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one

another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Where a request for relocation of the subject child along with a parent is involved, the trial court must consider the following ten relocation factors set forth within Section 5337(h) of the Act:

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h). *See E.D. supra*, at 81-82 ("Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child").

Further, with regard to the custody and relocation factors, we have stated as follows:

. . . "**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. *E.D., supra* at 81. The record must be clear on appeal that the trial court considered all the factors. *Id.* The record must be clear on appeal that the trial court considered all the factors. *Id.*

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.[] § 5323(d). Additionally,

- 12 -

"[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa.Super. 2013), *appeal denied*, [620 Pa. 727], 70 A.3d 808 (2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa.Super. 2014).

In its discussion on the record at the conclusion of the hearing, the trial court addressed the custody factors pursuant to Section 5328(a), as well as the relocation factors pursuant to Section 5337(h), stating as follows:

THE COURT: I'm going to first go over the custody factors, then I'll review the relocation factors, and then I will dictate a new [c]ustody [o]rder. I will be working from the Order of May 22nd. Some of the provisions will be the same, so if counsel want to pull that out to be able to follow along.

I'll start by saying that I'm satisfied that I've got two good parents here, and, for the most part, your children are very lucky. I won't be able to say that unless you can put the acrimony behind the two of you, as you did with your ex-wife, and maybe -- I'm hopeful that that will be the case once the other issues are resolved with regard to the separation and the divorce. . . .

Now, I'll start with the -- again, I only get to make this decision because you asked me to. I'm not in the best position to make this decision. You two are. I've got no business sticking my nose into your lives unless you ask me to. I don't tuck these kids in every night. I'm not with them every day. I'll do my best to determine what I feel is in their best interests based upon what I've heard today.

But you guys can tear up my [o]rder any time you want, and I encourage that to be done when the acrimony is behind you

and you are thinking rationally and can deal with what is best for your children. So, with that being said, I am going to go over the custody factors.

Number 1, which party is more likely to encourage and permit frequent and continuing contact between the children and the other party. That favors neither. I'm satisfied that both of you want the other party to be in the children's lives and that both of you believe that the other party is a good parent, and that's a very good start.

Number 2 [abuse of the Children] is not applicable.

Number 3, the parental duties performed by each party on behalf of the children. Based upon the history, that strongly favors mom.

Number 4, the need for stability and continuity in the child's education, family life and community life. That favors neither.

Number 5, the availability of extended family. We're talking about actual family. That favors mom.

Number 6, the children's sibling relationships. That strongly favors dad.

Number 7, the well-reasoned preference of the child is not applicable. Both children are too young to articulate that.

Number 8, the attempts of a parent to turn the child against the other parent. I'm very happy to report that that is not applicable in this case.

Number 9, which party is more able to maintain a loving, stable, consistent and nurturing relationship with the children adequate for their emotional needs. Both parties are capable. I find that that slightly favors mom.

Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child. Both parties are capable, but it does slightly favor mom based upon history.

Number 11, the proximity of the parties' residences. That's not a factor currently.

Number 12, each party's availability to care for the child or to make appropriate child care arrangements favors neither. Both parties are capable.

Number 13, the level of conflict. It's exceedingly high at the current time. In fact, it's so high that effective co-parenting is impossible at the current time. I think both parties recognize that. I'm hopeful that that will improve in the future, and I believe that it will once the parties put aside their differences and really focus on the best interests of the children.

Number 14, a history of drug and alcohol abuse of a party or member of a party's household. Not applicable.

Number 15, the mental and physical condition of a party or member of a party's household. That's not a factor.

Number 16, any other relevant factor. I think both parties agree, and I certainly find as a fact[,] that the constant change in custody between the parties is difficult on the children.

I will now move on to the relocation factors.

Number 1, the nature and quality and extent of involvement and duration of the child's relationship with the parties, siblings, et cetera. We find that the [C]hildren are very close and bonded with their mother. They also have a very strong bond with their father and their half siblings. However, the separation caused the father's involvement with the [C]hildren to suffer until recently, and the [C]hildren's involvement with their half siblings continues to suffer.

Number 2, the age, developmental stage, needs of the children and the likely impact of relocation. We find that the relocation of the [C]hildren to Baltimore County, Maryland, will positively impact their lives because of the strong support system of [M]other's family and their increased contact with their grandparents, aunt and cousin. It may, on the other hand, reduce somewhat the contact they are currently having with their half siblings.

Number 3, the feasibility of preserving the relationship between the non-relocating party and the children. We are satisfied that the relationship between father and the [C]hildren can be maintained and can be strong through an appropriate

custody arrangement, although, obviously, not to the extent that dad would like or that dad is willing to have.

Number 4, the child's preference. The [C]hildren's preference is not applicable.

Number 5, an established pattern of conduct to promote or thwart the relationship of the child with the other party. Neither party has attempted to thwart the relationship of the [C]hildren with the other party, and both parties, we are satisfied, will encourage the involvement of the other in the lives of their children.

Number 6, whether relocation will enhance the general quality of life for the party seeking the relocation. In this case, we are satisfied that it will greatly enhance mother's quality of life both financially and emotionally.

Number 7, whether the relocation will enhance the general quality of life for the children. In this case, we find that it will enhance the general quality of life for the [C]hildren because of the support mother will receive and their increased contact with extended family.

Number 8, the reasons and motivation of each party. We are satisfied that the motives of both parties in this case are legitimate. This is a very difficult situation. The parties were not able, for whatever reason, to make a go of it together. Mother's strongest support system is in Baltimore County, Maryland. Father has ties to this area. Both want to be a substantial part of the [C]hildren's lives.

Number 9, present and past abuse is not a factor.

Number 10, any other factor affecting the best interests of the children. We're satisfied that with the proximity of Baltimore County, Maryland, to this area that the move could be accomplished with a shared custody arrangement. However, we are further satisfied that the parties' inability to co-parent and the adverse effect of numerous custody exchanges upon the [C]hildren make such an arrangement to be not in the [C]hildren's best interests.

N.T., 12/14/18, at 136-41.

In its Rule 1925(a) Opinion, the court further stated,

In reaching our decision, we gave due consideration to both the custody factors and relocation factors. 23 Pa.C.S. § 5328(a) and 5337(h). [**See M.J.M. v. M.L.G.**], 63 A.3d 331 (Pa.Super. 2013).

In consideration of the statutory factors, our paramount concern was the best interest of the children. We felt that it was in their best interest to continue living primarily with Mother[,] who unquestionably has been the nurturing parent. We also found that it was in their best interest to allow Mother to relocate to Maryland where she and the [C]hildren will be closer to their familial support system. [**See**] 23 Pa.C.S.[] § 5337(i). [**See also S.J.S. v. M.J.S.**], 76 A.3d 541 (Pa.Super. 2013). We found that the basis of Mother's desire to relocate is to provide her and the [C]hildren with an improved lifestyle. We also found that the relocation is not intended to frustrate the [C]hildren's relationship with Father.

T.C.O. at 3-4 (footnote omitted).

Turning to Father's issues on appeal, Father contends that the trial court erred in awarding custody as its analysis of the custody factors was not supported by the record. Father asserts,

The lower [c]ourt vacated a shared custody schedule where the parties had 50/50 custody in favor of an order that awards Mother primary physical custody and, germane to this appeal, under which Father has every other Wednesday through Sunday during the school year once D.R. reaches kindergarten. Father (who the [c]ourt acknowledged was a fit parent) thus has ten day stretches of time without his children, and is somehow expected to drive his children over an hour back and forth each way to and from Maryland during the school week. This scheme is not in the best interests of the children and is derived from factual findings and inferences that are contrary to the evidence.

Father's Brief at 17.

Specifically, Father claims that the trial court erred in its analysis of and determinations as to Section 5328(a)(3), (4), (5), (11), and (13). As to custody factor 3 (parental duties performed by each party on behalf of the

child), Father challenges the court's determination that Mother has borne more parental responsibility, maintaining that the parties have strictly adhered to a 50/50 custody schedule since July 2018. As to custody factor 4, (the need for stability and continuity in the child's education, family life and community life), Father suggests that the court's order "encourages chaos" as the Children will have less frequent contact with their father and half-siblings, and more frequent travel created by the court's order. *Id.* at 18. With regard to custody factor 5 (availability of extended family), Father contends that the court ignored his substantial support network, including the Children's grandfather, uncle, and godparents.

Moreover, as to custody factor 11 (proximity of the parties' residences), Father argues that the court ignored the impact of relocation on the Children by increasing the distance between the residences of the parties. He states,

> With respect to [c]ustody [f]actor #11[,] the [c]ourt conclusorily stated, "That's not a factor currently." *But the [c]ourt made things worse by granting the relocation.* As a result of what the lower [c]ourt did, when D.R. reaches school age (next year), Father has to either forfeit his time with the children on the weekdays, or spend all his time in transit with them, or move to Maryland and abandon his older children. By granting the relocation and ignoring its effect on the proximity of the parties' residences, the lower [c]ourt has made things substantially worse for these children.

*Id.* at 18-19 (citations omitted) (emphasis in original). As to custody factor 13 (level of conflict between the parties), Father asserts that the trial court merely acknowledged the existence of conflict between the parties and, yet, proceeded to issue an order guaranteed to cause more conflict.

Father argues that the trial court also erred in granting relocation as its findings of fact and inferences were not supported by the record. Specifically, Father claims that the trial court erred in its analysis of and determinations as to Section 5337(h)(1), (2), (3), (6), (7). With regard to relocation factor 1 (the nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life), Father argues that the record does not support that the finding that the Children's relationship with their older two siblings has suffered. He indicates,

> The only reason their time has been limited is because of the living arrangement Mother forced Father into. . . .In any event, Father and the mother of the two older siblings have made clear that when Father soon secures larger living quarters, he will be able to return to the week on, week off schedule with the older siblings[,] which will facilitate more consistent contact amongst all of the siblings. Quixotically, the lower [c]ourt's solution to this issue- allowing Mother to move to Maryland- is the only thing that will damage the relationship amongst the siblings.

*Id.* at 12-13.

As to relocation factor 2 (the age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development) and factor 7 (whether relocation will enhance the general quality of life for the children), Father reiterates that there will be no improvement to their family relationships as the Children already have substantial contact with Mother's extended family and will now have less contact with their half-siblings and Father's extended family. Father points out that the Children would have smaller living quarters in a shared

three-bedroom apartment, where they would be sharing a bedroom. Lastly, Father points to the large amount of travel time required every other Wednesday through Friday during his custodial time.

As to relocation factor 3 (the feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements), Father asserts that his relationship with the Children will be strained as "[t]he [c]ourt's order results in Father having ten-day stretches of non-custodial time, not to mention the fact that Father has essentially been eliminated from the [C]hildren's schooling." *Id.* at 14.

With regard to relocation factor 6 (whether the relocation will enhance the general quality of life for the party seeking the relocation), Father challenges the improvement to Mother's quality of life as a result of relocation to Maryland. Father highlights the amount of time Mother already spends with her family, the fact that she does well and has a flexible schedule, and that her title and salary would not change in Maryland. Father asserts,

> First, Mother and her family had already established the ability to spend significant amounts of time together. Second, Mother testified that she makes a "great living" in Pennsylvania, makes her own schedule, had no set hours, and only takes business trips once or twice a year and that she could dictate where those trips were. Third, her position and substantial salary were not changing in Maryland. Given the foregoing, there are no real improvements to her quality of life in Maryland.

*Id.* (citations to record omitted) (footnote omitted).

With regard to the custody and relocation factors, we have stated that the trial court is required to consider all such factors. *J.R.M. v. J.E.A.*, 33

A.3d 647, 652 (Pa.Super. 2011). Although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to Section 5328(a), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.Super. 2013). Critically, we acknowledge:

> ***It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case***. ***See A.D. v. M.A.B.,*** 989 A.2d 32, 35-36 (Pa.Super. 2010) ("In reviewing a custody order ... our role does not include making independent factual determinations.... In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

*Id.* (emphasis added). Further, we have also noted that, while the primary caretaker doctrine is no longer viable, a court may still consider a parent's role as primary caretaker in its consideration of the custody factors.

> We hasten to add that this conclusion does not mean that a trial court cannot consider a parent's role as the primary caretaker when engaging in the statutorily-guided inquiry. As discussed above, a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the [S]ection 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16).

*Id.*

As we construe these claims, we interpret the issues raised at their core as disputes to the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Father, in essence, questions the trial

court's conclusions and assessments and seeks this court to reweigh evidence and/or reassess credibility to support his view of the evidence.

Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527. As we stated in **King v. King**, 889 A.2d 630, 632 (Pa.Super. 2005), "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . ." **Id**. (quoting **Hanson v. Hanson**, 878 A.2d 127, 129 (Pa.Super. 2005)). After a thorough review of the record, we find no abuse of discretion.

Further, to the extent Father challenges the weight attributed to any factor by the trial court, we likewise find no abuse of discretion. As stated above, the amount of weight that a trial court gives to any one factor is almost entirely within its discretion. **See M.J.M.**, 63 A.3d at 339.

In the case sub *judice*, the trial court analyzed and addressed each of the custody and relocation factors pursuant to Section 5328(a) and Section 5337(h). **See** N.T., 12/14/18, at 136-41. After careful review of the record, we determine that the trial court's findings and determinations are supported by competent evidence in the record, and we will not disturb them. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527.

For the foregoing reasons, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2019